## KENNEY v. WALLACE.

1. Where the affidavit supporting the petition for an attachment issued on the ground of fraud is not positive, but only "to the best of affiant's knowledge and belief," the burden of proof on the hearing of an application to dissolve the attachment is upon the plaintiff.
2. On the facts in evidence, there was no abuse of discretion by the presiding judge in dissolving the attachment.

October 19, 1891.            *Judgment affirmed.*

Attachment. Fraud. Burden of proof. Before Judge MARSHALL J. CLARKE. Fulton county. At chambers, February 11, 1891.

The exceptions in this case are, that the judge below erred in removing an attachment which had been issued on the petition of Kenney against P. J. Wallace upon an allegation of fraudulent sale by P. J. Wallace to his brother, F. M. Wallace, and in requiring the plaintiff in attachment to assume the burden of proof upon the hearing of the petition of P. J. Wallace to remove the attachment. The petition for the attachment alleged

that P. J. Wallace owed the petitioner $651.75, and for the purpose of avoiding the payment of his debts had fraudulently sold out his entire stock of liquors, etc. to his brother, F. M. Wallace, who knew that P. J. Wallace was insolvent, that the sale was for the purpose of defrauding creditors, and that the price paid was less than the value of the property sold. The attachment was levied on a stock of whiskey, etc. as the property of the defendant, who, by his petition for the removal of the attachment, made the following averments: He denies that the sale was fraudulent, and alleges that it was in good faith and to pay his debts so far as he could. At the time of the sale he owed borrowed money, to wit: Redwine $2,038.30, Vaughn $1,600, J. H. & A. L. James $85.37, and F. M. Wallace $1,065.25. The indebtedness due Redwine and Vaughn was evidenced by promissory notes, the Vaughn notes secured by mortgage on the property sold, and $1,000 of the amount due F. M. Wallace was evidenced by notes secured by mortgage on the same property. The consideration for the sale to F. M. was the payment of the amount due F. M. and the undertaking by F. M. to pay the amounts due Redwine, James and Vaughn, making a total consideration of $4,788.92, which was the full value of the property conveyed. P. J. was not able to pay his debts when they fell due; Redwine was urging payment of his claim and threatening to close up his business, and if he had done so, the amount that could have been realized by forced sale would not have been enough to pay off the mortgage of Vaughn and the claims of Redwine and Wallace; and to avoid being closed up and prevent the sacrifice of his goods, P. J. made the arrangement with F. M. with the consent of Redwine and Vaughn.

At the hearing of this petition affidavits were produced by plaintiff in attachment, from which the follow-

ing appeared: P. J. Wallace was largely indebted in addition to the indebtedness already mentioned, of which fact F. M. Wallace knew. F. M. had previously been in the bar-room business and had sold out (he said) because he wanted to quit that business or because his wife opposed his being in it. On the morning of February 7, 1891, F. M. was in charge of P. J's bar-room, and for several days previously seemed to be exercising the same control over the property that he was on the 7th inst., and never mentioned to Kenney, who had been going during the time mentioned to the bar-room for the purpose of collecting the indebtedness of P. J. to him, that he, F. M., had bought out P. J. Kenney informed F. M. that the notes of P. J. to Kenney were past due, and when Kenney went to the bar-room on February 7th and asked F. M. why F. M. did not tell him when he was there with the notes that he, F. M., had bought out his brother, F. M. replied that he thought Kenney knew it, and told Kenney that the transfer took place on the 5th of February. Kenney asked him to let him see the papers relating to the trade, and F. M. agreed to do it at two o'clock that day, the 7th, but at two o'clock informed Kenney that he did not bring up the papers, and referred him to Redwine. The indebtedness of P. J. to Redwine was as stated, and was for money loaned. Redwine believed him to be solvent until after the sale, and knew nothing about his indebtedness. F. M. voluntarily paid Redwine $402.75, there being no agreement at all except that F. M. told Redwine after the sale that he would pay Redwine first of all. Since February 6, 1891, F. M. gave his individual notes to Redwine, some of them dated February 7, 1891, some February 5, 1891, some January 28, 1891, and some January 30, 1891; some of them were signed also by P. J.; Redwine kept P. J. on the notes because he never liked to release any-

body, except for cash.   The notes, dated February 5th, were not signed until February 7th; they were given for indebtedness of P. J. to Redwine which fell due on the 5th, and for that reason were dated February 5th. The bill of sale was drawn on February 6th by Redwine in the presence of both the Wallaces and at their joint request.   The mortgages of Vaughn and F. M. Wallace are not of record.

The evidence introduced on behalf of the defendant in attachment tended to sustain the allegations of his petition and to show that the indebtedness to Redwine, Vaughn and F. M. Wallace was *bona fide;* that the sale was made in good faith, without knowledge on the part of F. M. or reason to suspect that P. J. in making the sale was acting fraudulently; that the consideration for the sale was full and adequate; that F. M. agreed to pay the indebtedness due to Redwine, Vaughn and the Jameses; that an inventory of the stock and appurtenances of the business footed up $3,285.10, which amount was expressed as the consideration for the bill of sale in that instrument, but Redwine, who drew the bill of sale, overlooked at the time the further condition that F. M. Wallace was to pay the Vaughn mortgage.

R. J. JORDAN, for plaintiff.

BROYLES & SONS, for defendant.